IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BAFUS/DUDLEY, | ) | |
| | ) | Case No.  CV-04-121-S-BLW |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| ASPEN REALTY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| CURTIS AND GWENDOLYN, | ) | |
| BLOUGH, | ) | |
| | ) | Case No.  CV-06-059-S-BLW |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOLLAND REALTY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| GARY AND SHAWNA YASUDA, | ) | |
| | ) | Case No.  CV-06-060-S-BLW |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SEL-EQUITY, CO., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**Memorandum Decision and Order - 1**

MERRITHEW/HOWELL,                    )
                                     )      Case No.  CV-06-061-S-BLW
            Plaintiffs,              )
                                     )
      v.                             )
                                     )
PARK POINTE REALTY, INC.,            )
                                     )
            Defendant.               )
_____ )

## INTRODUCTION

The Court has before it several motions in four separate cases.  Although the cases are proceeding separately, the Court held a combined hearing on September 17, 2007 in all four cases because the legal issues are similar in each case.  In this Memorandum Decision and Order, the Court will refer to all defendants in all cases as Defendants, and all plaintiffs in all cases as Plaintiffs.  The Court will make distinctions where necessary.  Below, the Court will address Defendants' motions for summary judgment and Plaintiffs' Rule 56(f) motions, which consist of docket nos. 139 and 144 in Case No. CV-04-121-S-BLW, docket nos. 60 and 64 in Case No. CV-06-59-S-BLW, docket nos. 82 and 88 in Case No. CV-06-60-S-BLW, and docket nos. 77 and 80 in Case No. 06-61-S-BLW.

## STANDARD OF REVIEW

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S.

**Memorandum Decision and Order - 2**

317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the

"principal tool[ ] by which factually insufficient claims or defenses [can] be

isolated and prevented from going to trial with the attendant unwarranted

consumption of public and private resources."  *Id.* at 327.   "[T]he mere existence of

some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving

party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct

testimony of the non-movant must be believed, however implausible.  *Leslie v.*

*Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is

not required to adopt unreasonable inferences from circumstantial evidence.

*McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc).  To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply

point out the absence of evidence to support the nonmoving party's case.  *Fairbank*

**Memorandum Decision and Order - 3**

*v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988). Authentication, required by Federal Rule of Evidence 901(a), is not

satisfied simply by attaching a document to an affidavit.  *Id.*  The affidavit must

contain testimony of a witness with personal knowledge of the facts who attests to

the identity and due execution of the document.  *Id.*

## ANALYSIS

### I.    Defendants' Motions Summary Judgment

Because the bulk of the issues presented in all of the motions for summary

judgment by all defendants are similar, and because the standard for deciding them

is the same, the Court will address the motions together.

### A.    Zero Foreclosure[1]

An essential element of Plaintiffs' tying claim is that the alleged tying

practice "affects a not insubstantial volume of commerce in the tied product

market."  *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th

Cir. 2003) (internal quotation marks omitted). To affect a not insubstantial volume

of commerce in the tied-product market, a tying practice must foreclose the

defendant's competitors from competing for sales of the tied product.  *See*

---

[1] Plaintiffs' tying claims are asserted under both federal and state law. The Idaho
Supreme Court regards federal antitrust case law as persuasive in deciding state antitrust claims.
*See, e.g., K. Hefner, Inc. v. Caremark, Inc.*, 918 P.2d 595 (1996). Federal case law generally
determines the outcome of state antitrust claims where the state adheres to federal antitrust law.
*See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 811 n. 4 (9th Cir. 1988).  Accordingly, the
Court will address the tying claims under federal law, and the state tying claims will remain or
fall with the federal claims.

**Memorandum Decision and Order - 5**

*Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1425 (9th Cir. 1995) (citing

*Fortner Enters., Inc. v. United States Steel Corp.*, 394 U.S. 495, 501 (1969)).  The

Ninth Circuit has recognized that "[t]he essence of a *per se* unlawful tying

arrangement . . . is that it *forecloses* competition in the market for the tied product

or products."  *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, at

542 (emphasis in original).

The not insubstantial volume of commerce requirement is not met if the

plaintiff would not have bought the tied product at all in the absence of the tying

arrangement.  *See, e.*g., id.; X Phillip E. Areeda et al., *Antitrust Law* § 1769e1

(1996) ("When all buyers are forced to take a tied product they do not want and

would not have purchased elsewhere, tied-market foreclosure is zero and thus does

not satisfy even the minimal requirements for per se illegality.").  Professor Areeda

terms this "zero foreclosure."  In his treatise, Professor Areeda explains as follows:

> The Supreme Court has told us that tie-ins are not per se
> unlawful "when a purchaser is 'forced' to buy a product
> *he would not have otherwise bought even from another
> seller* in the tied product market. . . ."  In that event, the
> Court explained, "there can be no adverse impact on
> competition because no portion of the market which
> would otherwise have been available to other sellers has
> been foreclosed."  Accordingly, such a tie would fail the
> per se rule's "threshold" of "a substantial potential for
> impact on competition."  The Court thus defined the
> competitive threat underlying per se condemnation solely
> in terms of potential foreclosure and recognized that

Memorandum Decision and Order - 6

> some tie-ins bring about no foreclosure and thus should
> not be condemned even when the seller has power in the
> market for the tying product and affects a substantial
> volume of commerce in the tied market.  Implicitly, that
> conclusion also indicates that high prices standing alone
> are not the evil that antitrust tying law condemns.  It is
> not antitrust's mission to regulate contract prices, but to
> prevent injuries to competition.

IX Phillip E. Areeda, *Antitrust Law* § 1724a (1991) (emphasis in original) (citing

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984).

However, at first blush, Professor Areeda's reliance on *Jefferson Parish*

*Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984), seems misplaced.  In *Jefferson*

*Parish,* the Supreme Court stated that "the essential characteristic of an invalid

tying arrangement lies in the seller's exploitation of its control over the tying

product to force the buyer into the purchase of a tied product that the buyer either

*did not want at all*, or might have preferred to purchase elsewhere on different

terms."  *Jefferson Parish*, 466 U.S at 12 (emphasis added).  This passage seems to

suggests that a tying claim can lie even when the tied product is wholly unwanted.

However, the Supreme Court went on to explain that "when a purchaser is 'forced'

to buy a product he would not have otherwise bought even from another seller in

the tied-product market, there can be no adverse impact on competition because no

portion of the market which would otherwise have been available to other sellers

has been foreclosed." *Id*. at 16.

**Memorandum Decision and Order - 7**

Although these two statements appear inconsistent with each other, two subsequent circuit-level decisions explain why they are not, and why Professor Areeda is correct in his assertion that zero foreclosure defeats a per se tying claim. In *Barber & Ross Co. v. Lifetime Doors, Inc.*, 810 F.2d 1276 (4th Cir. 1987), the Fourth Circuit explained that the second passage suggests that "the lack of an anticompetitive effect of a forced purchase on a purchaser may have a bearing on whether the tying arrangement has had a substantial effect on commerce, a threshold requirement of per se condemnation," but "[a]n anticompetitive effect is not a threshold requirement . . . for a purchaser to have standing under the antitrust laws." *Barber*, 810 F.2d at 1279 n. 1. Similarly, in *Wells Real Estate, Inc., v. Greater Lowell Bd. of Realtors*, 850 F.2d 803 (1st Cir. 1988), the First Circuit stated that the second passage is "not . . . relevant to the issue of plaintiffs' injury and standing to sue, but as regarding the plaintiffs' showing as to the not insubstantial volume of commerce that is foreclosed by the tie." *Wells*, 850 F.2d at 814-15 (internal quotation and citation omitted). The First Circuit explained that "[o]therwise, it would be impossible to reconcile the Supreme Court's language with the clear statement earlier in the same case that invalid tying exists where the buyer is forced into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Id.*

Memorandum Decision and Order - 8

at 815 (internal quotation and citation omitted).  Because the plaintiff in *Wells* failed to show that any market existed for the tied product, the requisite foreclosure of competition in the tied-product market was not shown, and the tying claim failed as a matter of law.  *See Id*. at 815 & n. 11.

Thus, a plaintiff is not deprived of antitrust standing because he/she did not want to purchase the tied product from any source.  However, a plaintiff must show that a market existed for the tied product in order to fulfill the requisite foreclosure of competition in the tied-product market, or the tying claim fails as a matter of law.

The question here, then, is not whether Defendants had standing to bring their tying claims; the question is whether Defendants, in allegedly forcing Plaintiffs to buy Defendants' services on the sale of the subject homes built on the lots, foreclosed other brokerages from selling that same product to Plaintiffs.  If they did not, zero foreclosure exists and Plaintiffs' claims fail as a matter of law. This is so, because Plaintiffs would be unable to show that the alleged tying practice affected a not insubstantial volume of commerce in the tied product market.  *See Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003).

As discussed above, to carry their burden on summary judgment, Defendants

**Memorandum Decision and Order - 9**

need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *See Fairbank,* 212 F.3d at 532.  The Amended Complaints in each of the four cases support a finding that Plaintiffs did not want to purchase the tied product – Defendants' services with regard to the sale of developed lots – from any source.  In their Amended Complaints, Plaintiffs state that Defendants' actions "limit[ ] competition from real estate brokers who . . . could charge a commission for the sale of an undeveloped lot independent of a commission on the sale of the house, [which] denies consumers the opportunity for lower prices and the ability to select, if desired, a broker who would not charge commissions on the to-be-built house." (Blough Docket No. 5 ¶ 37; Yasuda Docket No. 5 ¶ 34; Merrithew/Howell Docket No. 7 ¶ 31; Bafus/Dudley Docket No. 83 ¶ 40).  Plaintiffs repeat this statement, almost verbatim, just paragraphs later, stating that the "actions of the Defendant . . . restrained trade by limiting competition from real estate brokers who, but for the action fo the Defendant, could have sold undeveloped lots and charged a commission based on the price of the lot without a commission on the sale of the house, thus benefitting buyers with lower prices and the ability to select a broker who would not charge a commission on the house."  (Blough Docket No. 5 ¶ 44; Yasuda Docket No. 5 ¶ 41;

**Memorandum Decision and Order - 10**

Merrithew/Howell Docket No. 7 ¶ 38; Bafus/Dudley Docket No. 83 ¶ 47).

Additionally, Defendants have pointed out that nowhere in any of Plaintiffs' pleadings, affidavits, depositions, etc. have Plaintiffs indicated that they did, in fact, desire to purchase the tied product from any source. Instead, the alleged limiting effect is to impede competition from brokers who would agree not to sell the tied product at all, suggesting an inflated price on the tying product, but no impact on competition in the tied product.

Defendants have thus shown that Plaintiffs lack evidence of foreclosure by pointing out that Plaintiffs did not want to purchase the tied product from any source. The burden therefore shifts to Plaintiffs to produce evidence sufficient to support a jury verdict in their favor. *Fairbank,* 212 F.3d at 256-57. The non-moving party must go beyond the pleadings and show "by . . . affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324. Plaintiffs have not come forth with any such evidence. However, Plaintiffs have moved for relief pursuant to F.R.C.P. 56(f).

The Court may postpone deciding a motion for summary judgment in order to give the nonmoving party more time to gather evidence. Fed. R. Civ. P. 56(f). Rule 56(f) requires "'(a) a timely application which (b) specifically identifies (c)

**Memorandum Decision and Order - 11**

relevant information, (d) where there is some basis for believing that the information sought actually exists.'" *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)).  The burden is on the party submitting the 56(f) motion to proffer sufficient facts to show that the evidence sought exists, and that such evidence would prevent summary judgment. *See Id.* at 1129-30.  Mere hope that further evidence will develop prior to trial is insufficient. *See Continental Mar. of San Francisco v. Pacific Coast Metal Trades Dist. Council*, 817 F.2d 1391, 1395 (9th Cir. 1987).

Plaintiffs attempt to meet their burden by suggesting that some class members may have wanted to purchase the tied product from another realtor. However, Plaintiffs have provided the Court with no basis for believing that such individuals actually exist. *See Employers Teamsters*, 353 F.3d at 1129.  Although Plaintiffs express concerns about inadequate discovery responses by Defendants, Plaintiffs provide no explanation as to why any class member would have wanted to purchase the tied product from another source.

Also noteworthy is the fact that not one of the class representatives, in any of the four pending cases, all of whom have been deposed, wanted to purchase the tied product from another source.  Plaintiffs seem to want the Court to infer that

**Memorandum Decision and Order - 12**

because Plaintiffs have not discovered the existence of all class members, it is likely there are class members who wanted to purchase the tied product from another source.  That, however, is an unreasonable inference.  The more reasonable inference is that the unknown class members, like all of the class representatives in all of the cases, wanted to purchase the tying product without having to purchase the tied product at all.

Next, Plaintiffs offer the testimony of their expert economist, Ed Whitelaw, who states that he cannot complete his analysis of the economic effects of the alleged tying practice until the discovery issues have been resolved.  However, Whitelaw provides no indication that his planned economic analysis would solve the Plaintiffs' zero foreclosure problem.   He fails to indicate how his analysis would show the foreclosure of competition for tied-product sales, or establish that some some class members wanted to buy the tying product from another source.  In short, Whitelaw is no help in suggesting that class members exist who wanted to buy the tied product from another source.

Plaintiffs simply have not met their 56(f) burden of identifying relevant information where there is some basis for believing that the information sought actually exists.  *See Employers Teamsters*, 353 F.3d at 1129.  Plaintiffs therefore are not entitled to a Rule 56(f) stay of decision on Defendants' zero foreclosure

**Memorandum Decision and Order - 13**

defense to the tying claims.  Accordingly, Defendants' motions for summary judgment on the tying claims will be granted based on the zero foreclosure defense.[2]

## II.    Remaining Claims

The Court notes that the only remaining claims are Plaintiffs' claims pursuant to the Idaho Consumer Protection Act ("ICPA").  The Court also notes that there are several motions, including motions to amend the complaints and motions to compel, pending in each of the four cases.  Given the Court's disposition of the antitrust claims, the Court will ask the parties to meet and confer about which of the pending motions are still ripe for decision and which are now moot.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' motions for summary judgment (Docket No. 139 in Case No. CV-04-121-S-BLW, Docket No. 60 in Case No. CV-06-59-S-BLW, Docket No. 82 in Case No. CV-06-60-S-BLW, and Docket No. 77 in Case No. 06-61-S-BLW, shall be, and the same are

---

[2] Although Defendant Park Pointe Realty, Inc. did not present the zero foreclosure defense in its brief, counsel for Park Pointe indicated during oral argument that Park Pointe joined in all defenses asserted by the other Defendants.  Therefore, because Plaintiffs' theory of the case is nearly identical in all four cases, the Court finds that the zero foreclosure defense supports summary judgment in favor of Park Pointe as well as the other Defendants.

**Memorandum Decision and Order - 14**

hereby, GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' motions for relief pursuant to Rule 56(f) (Docket No. 144 in Case No. CV-04-121-S-BLW, Docket No. 64 in Case No. CV-06-59-S-BLW, Docket No. 88 in Case No. CV-06-60-S-BLW, and Docket No. 80 in Case No. 06-61-S-BLW, shall be, and the same are hereby, DENIED.

IT IS FURTHER ORDERED that the Clerk of the Court shall set this case for a status conference.

IT IS FURTHER ORDERED that the parties meet an confer to discuss which of the pending motions are ripe for decision, and which are moot.  The parties shall be prepared to discuss these matters at the status conference.



DATED:  **November 30, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 15**